ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DAVID L. KIRMAN
Assistant United States Attorney
California Bar Number: 235175
  1100 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-4442
  Facsimile: (213) 894-6269
  E-mail: david.kirman@usdoj.gov

Attorneys for Complainant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>GANG-CHOON HAN,<br><br>A Fugitive from the Government of the Republic of Korea. | NO. CV 11-02059-DMG(MLG)<br><br>**UNITED STATES' REPLY TO FUGITIVE HAN'S OPPOSITION TO EXTRADITION**<br><br>**HEARING DATE: 10/3/11**<br>**HEARING TIME: 10:00 a.m.** |

   Complainant United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits the following

///

///

///

///

///

///

1    reply to fugitive Gang-Choon Han's opposition to extradition.

2    DATE: August 25, 2011

3                                    Respectfully submitted,

4                                    ANDRÉ BIROTTE JR.
                                     United States Attorney
5
                                     ROBERT E. DUGDALE
6                                    Assistant United States Attorney
                                     Chief, Criminal Division
7
                                     DOROTHY KIM
8                                    Assistant United States Attorney
                                     International Coordinator
9

10                                   _____/s/_____
                                     DAVID L. KIRMAN
11                                   Assistant United States Attorney
                                     Major Frauds Section
12
                                     Attorneys for Complainant
13                                   UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

                                                                 **PAGE**

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . .  ii

MEMORANDUM OF POINTS AND AUTHORITIES  . . . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . .1

II.   THE ELEMENTS FOR EXTRADITION HAVE BEEN MET IN THIS CASE  . 2

      A.    Probable Cause Exists . . . . . . . . . . . . . . 2

            1.    Charge 1: There is Probable Cause to Believe
                  the Fugitive Stole Du-yeol's Telephones  . . . . 3

            2.    Charge 3: There is Probable Cause to Believe
                  the Fugitive Defrauded Kookmin Bank and the
                  Korea Guarantee Credit Fund ("KCGF") . . . . . . 8

            3.    Charge 5: There is Probable Cause to Believe
                  the Fugitive Defrauded Kim Hwan-gyun . . . . . 10

            4.    Charge 6: There is Probable Cause to Believe
                  the Fugitive Concealed Assets After Deltacom
                  was put in Bankruptcy . . . . . . . . . . . . 12

      B.    The Statute of Limitations Has Not Run  . . . . . . 14

            1.    The Statute of Limitations Period Ended Once
                  South Korea Summonsed the Fugitive to Answer
                  for His Crimes . . . . . . . . . . . . . . . 15

            2.    The Statute of Limitations does not Extend to
                  the Fugitive in any event because he Fled from
                  Justice  . . . . . . . . . . . . . . . . . . 16

III.  THE COURT MAY NOT CONSIDER THE FUGITIVE'S CLAIMS OF
      CORRUPTION OR AFFILIATION WITH ORGANIZED CRIME . . . . . 19

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . 20

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES:**                                                    **PAGE(S)**

Arine v. United States,
      10 F.2d 778 (9th Cir. 1926) ........................  14, 15

Barapind v. Enomoto,
      400 F.3d 744 (9th Cir. 2005) ...........................  7

Caplan v. Vokes,
      649 F.2d 1336 (9th Cir. Cal. 1981) ....................  16

Cornejo-Barreto v. Siefert,
      379 F.3d 1075 (9th Cir. 2004)...........................19

Cornejo-Barreto v. Siefert,
      389 F.3d 1307 (9th Cir. 2004) ..........................  19

Eain v. Wilkes,
      641 F.2d 504 (7th Cir. 1981) ..........................  17

Garcia v. Benov,
      395 Fed. Appx. 329, 330 (9th Cir. 2010) ................  19

Jhirad v. Ferrandina,
      536 F.2d 478 (2nd Cir. 1976) ..........................  16

Koskotas v. Roche,
      931 F.2d 169 (1st Cir. 1991) .....................  3, 6, 7

Man-Seok Choe v. Torres,
      525 F.3d 733 (9th Cir. 2008) ......................  16, 18

Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,
      926 F.2d 1248 (1st Cir. 1991) .........................  14

Neder v. United States,
      527 U.S. 1 (1999) ..............................  8, 11, 12

Ornelas v. Ruiz,
      161 U.S. 502 (1896) ....................................  2

Prasoprat v. Benov,
      421 F.3d 1009 (9th Cir. 2005) .........................  19

In re Sainez,
      2008 U.S. Dist. LEXIS 9573 (S.D. Cal. Feb. 8, 2008) ....  15

In re Sindona,
      450 F. Supp. 672 (S.D.N.Y. 1978) ...................  2, 6

ii

**TABLE OF AUTHORITIES (CONTINUED)**

**FEDERAL CASES:**                                                     **PAGE(S)**

Taylor v. Freeland & Kronz,
        503 U.S. 638 (1992) ..................................... 13

Taylor v. United States,
        320 F.2d 843 (9th Cir. 1963) ......................... 4, 5

Taylor v. United States,
        376 U.S. 916 (1964) ................................ 4, 5

In re Trinidad,
        2010 U.S. Dist. LEXIS 129818 (N.D. Cal. 2010) .......... 6

United States ex rel. Sakaguchi v. Kaulukukui,
        520 F.2d  726 (9th Cir. 1975) .......................... 2

United States v. Ballesteros-Cordova,
        586 F.2d 1321 (9th Cir. 1978) ......................... 17

United States v. Center,
        853 F.2d 568 (7th Cir. 1988) ...................... 13, 14

United States v. Moede,
        48 F.3d 238 (7th Cir. 1995) ..................... 8, 9, 10

United States v. Porter,
        842 F.2d 1021 (8th Cir. 1988) ......................... 13

United States v. Santos,
        527 F.3d 1003 (9th Cir. 2008) ..................... 10, 17

United States v. Sullivan,
        522 F.3d 967 (9th Cir. 2008) ......................... 14

**STATUTES:**

18 U.S.C. § 152(1) ....................................... 12

18 U.S.C. § 1343 ...................................... 8, 10

18 U.S.C. § 1344 ...................................... 8, 10

18 U.S.C. § 3290 ......................................... 16

18 U.S.C. § 3293 ......................................... 16

Cal. Penal Code § 484 .................................... 3

Cal. Penal Code § 487 .................................... 3

Cal. Penal Code § 801.5 ................................. 16

iii

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3    South Korea alleges that fugitive Gang-Choon Han (the

4 "fugitive") engaged in a widespread spree of financial crimes

5 including theft, obtaining fraudulent loans, defrauding a bank,

6 and concealing assets from a bankruptcy.  Shortly after this

7 crime spree and just five days after South Korean prosecutors

8 sent the fugitive a summons to answer for one of the crimes, the

9 fugitive fled to the United States.  He never returned to South

10 Korea.  In the subsequent months, South Korean prosecutors

11 summonsed the fugitive to answer for the remainder of his

12 crimes.  The fugitive never answered the summonses.  South

13 Korean prosecutors then placed the fugitive on the wanted list

14 and now seek his extradition.

15    Disregarding the law and the facts of this case, the

16 fugitive opposes extradition.[1]  Specifically, while

17 acknowledging that probable cause is the standard for

18 extradition, the fugitive's opposition seeks to hold South Korea

19 to a higher standard, among other things, asking this Court to

20 improperly make credibility determinations between witnesses and

21 generally challenging the credibility of the evidence submitted

22 by South Korea.  In challenging the statute of limitations, the

23 fugitive ignores that South Korean prosecutors summonsed the

24 fugitive within the limitations period stopping the limitations

25

26 _____

27    [1]  At the fugitive's request, on July 12, 2011, the Court
granted the fugitive until August 11, 2011 to file a supplemental
opposition to the government's request for extradition.  The
28 fugitive never filed a supplemental opposition.

1   clock and, even assuming that did not stop the statute of

2   limitation's clock, his flight from justice tolled it.  Finally,

3   in challenging the extradition based on how he will be treated

4   if he is extradited, the fugitive ignores the rule of non-

5   inquiry and invites the Court exceed its authority.  Because

6   South Korea made a request for extradition of the fugitive under

7   the Extradition Treaty between the United States and the

8   Republic of Korea (the "Treaty") and has satisfied each of the

9   elements required for extradition, the United States, acting on

10  behalf of the Republic of Korea, respectfully renews its request

11  for extradition of the fugitive.

12  **II.   <u>THE ELEMENTS FOR EXTRADITION HAVE BEEN MET IN THIS CASE</u>**

13       The fugitive does not dispute that this Court has both

14  subject matter jurisdiction over this extradition and personal

15  jurisdiction over the fugitive.  (<u>See generally</u> Opp.).  Nor does

16  the fugitive dispute that the Treaty between the United States

17  and the Republic of Korea is in full force and effect.  (<u>Id.</u>).

18  Finally, the fugitive does not dispute the "dual-criminality" of

19  the crimes alleged or that they are extraditable offenses under

20  the Treaty.  (<u>Id.</u>).

21       The fugitive does, however, challenge two aspects of the

22  extradition, but both challenges are without merit.  First, the

23  fugitive claims that South Korea's extradition request failed to

24  establish probable cause.  (<u>Id.</u> at 8-10).  Second, the fugitive

25  claims that the extradition is barred by the statute of

26  limitations.  (<u>Id.</u> at 10).

27

28

**A.   Probable Cause Exists**

The evidentiary standard for an extradition, ignored by the fugitive, is probable cause.  <u>Ornelas v. Ruiz</u>, 161 U.S. 502, 512 (1896); <u>In re Sindona</u>, 450 F. Supp. 672, 676 (S.D.N.Y. 1978).  "The magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause."  <u>United States ex rel. Sakaguchi v. Kaulukukui</u>, 520 F.2d 726, 730-31 (9th Cir. 1975).  Although the fugitive's opposition wants to convert the extradition into a trial and challenge everything from credibility of the witnesses to the quality of the translation and weight of the underlying documents, (<u>see</u> Opp. at 9), "extradition proceedings are not to be converted into a dress rehearsal trial."  <u>Koskotas v. Roche</u>, 931 F.2d 169, 175 (1st Cir. 1991).  The only issue before this Court is whether the evidence submitted by South Korea contains probable cause for the crimes included in the United States' request for extradition.

**1.   Charge 1: There is Probable Cause to Believe the Fugitive Stole Du-yeol's Telephones**

As set forth in the United States' request for extradition, probable cause exists to believe that the fugitive stole Du-yeol's telephones.  The U.S. analog to the offense in Charge 1 is grand theft by embezzlement.  "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another . . . is guilty of theft."  Cal. Penal Code § 484.  Such theft occurs by embezzlement provided (1) the property owner entrusted property to the defendant; (2) the owner did so because he trusted the defendant; (3) the defendant

3

1  fraudulently converted that property for his own benefit; and

2  (4) when the defendant converted the property, he intended to

3  deprive the owner of its use.  Judicial Council of Cal. Jury

4  Instructions (CALJIC) 1806.  Grand theft is committed when "the

5  money, labor, or real or personal property taken is of a value

6  exceeding nine hundred fifty dollars ($950) . . . ."  Cal. Penal

7  Code § 487.  Usually intent in theft cases is "not generally

8  susceptible of direct proof but may be inferred from the facts

9  and circumstances attending the act."  <u>Taylor v. United States</u>,

10  320 F.2d 843, 849 (9th Cir. 1963), <u>cert. denied</u>, 376 U.S. 916

11  (1964).

12      On April 3, 2001, a judicial police officer of the Republic

13  of Korea reviewed JinainTech Corporation CEO Roh Du-Yeol's

14  statement.  (Ex. 1 to Request for Extradition ("Ex. 1") at

15  3.1.2.1).  Du-Yeol and the fugitive were introduced in September

16  of 2000.  (<u>Id.</u>).  Due to financial difficulties at the

17  fugitive's company, Deltacom, the fugitive requested a loan for

18  KRW 410 million from Du-Yeol in exchange for an exclusive

19  distribution agreement.  (<u>Id.</u>).  The fugitive also sold Du-Yeol

20  KRW 365 million[2] in telephone sets, but the fugitive held onto

21  the sets in response to Du-Yeol's request they be repaired

22  before distribution.  (<u>Id.</u>).

23      Du-Yeol provided a written accusation alleging the fugitive

24

25      [2]  KRW is short for South Korean Won.  In 2000, the exchange

26  rate was KRW 951 = $1.  (<u>see</u>
   http://en.wikipedia.org/wiki/Tables_of_historical_exchange_rates_

27  to_the_United_States_dollar (last visited 8/16/11)).  Therefore,
   KRW 350,000,000 is equal to over $360,000, well over the

28  threshold for Grand Theft.

4

1    sold his telephone sets and embezzled the proceeds, rather than
2    repair them.  (Id. at 3.1.1.1).  On April 6, 2001, a judicial
3    police officer of the Republic of Korea interviewed Kim Hyeon-
4    Tae, a Deltacom sales manager.  (Id. at 3.1.2.2).  Hyeon-Tae
5    stated that in October 2000 Du-Yeol requested the fugitive
6    repair 4,507 telephone sets. (Id.).  Hyeon-Tae also stated the
7    fugitive directed him to sell approximately 3,354 of Du-Yeol's
8    telephone sets to another corporation, rather than repair them.
9    (Id. at 3.1.2.1-3.1.2.2).

10        On an unknown date, the fugitive provided a statement to
11   Republic of Korea judicial police officer Park Kyung-Cheon.
12   (Id. at 3.1.2.4-3.1.2.5).  He stated that only 300 of the
13   thousands of telephone sets he sold belonged to Du-Yeol.  (Id.).
14   The fugitive claimed Du-Yeol's telephone sets were kept at
15   Deltacom.  (Id. at 3.1.2.5).  Kyung-Cheon confirmed on May 16,
16   2001, the telephone sets were not found during a subsequent
17   police search of the fugitive's warehouse at Deltacom.  (Id. at
18   3.1.2.6).

19        Du-Yeol entrusted KRW 365 million in telephone sets to the
20   fugitive for repair, satisfying the first element to be proven
21   under CALJIC 1806.  Du-Yeol entrusted the phones to the fugitive
22   on the basis of their professional relationship.  The existence
23   of this relationship shows Du-Yeol trusted the fugitive to fix
24   and return the phones at a later date, and satisfies the second
25   element of CALJIC 1806.  The fugitive took advantage of the
26   victim's trust and furtively sold Du-Yeol's telephone sets to
27   another corporation.  The fugitive himself admitted selling Du-
28   Yeol's telephone sets, satisfying the third element of CALJIC

1806: fraudulent conversion for his own benefit.  There is no evidence the fugitive ever gave over the telephones in question to Du-Yeol, or compensated him in any way.  The last element of CALJIC 1806 is also satisfied: it can be inferred the fugitive intended to deprive Du-Yeol of the use of the telephone sets that rightfully belonged to him because he sold them to another. See Taylor, 320 F.2d at 849 (state of mind to be inferred from attending acts' facts and circumstances).  The suspect also utilized tools such as email and fax in conducting his business. (Ex. 2 at 3).

In opposition to extradition on this charge, the fugitive has submitted a long narrative outlining his personal history and claims regarding his relationship with Du-Yeol.  Among other things, the fugitive claims: (1) Du-yeol is an organized crime gangster who threatened, kidnapped, and beat the fugitive and his associates; (2) the telephone sets never needed repair; (3) Du-yeol may have acted in a certain way because one of the fugitive's employees owed Du-yeol money; (4) the police investigated and sought to detain Du-yeol but were never successful; (5) the fugitive went into hiding as a result of Du-yeol's conduct; (6) Du-yeol threatened and harmed the fugitive's family; and (7) as a result of Du-yeol's conduct, the fugitive came to the United States and later brought his family as well. The fugitive also claims that the individual who sold Du-yeol's phones later became an employee of Du-yeol's phone company.

The Court should disregard the fugitive's evidence. Although a fugitive may offer "explanatory" evidence which has been defined as "reasonably clear-cut proof which would be of

6

limited scope and have some reasonable chance of negating a showing of probable cause," a court may disregard evidence which merely contradicts the demanding country's proof, or which only poses conflicts of credibility.  See e.g., In re Trinidad, 2010 U.S. Dist. LEXIS 129818 (N.D. Cal. 2010); In re Sindona, 450 F. Supp. 672, 685 (S.D.N.Y. 1978); Koskotas, 931 F.2d at 175. Because the fugitive's evidence is not "reasonably clear-cut proof" of limited scope which has a "reasonable chance of negating probable cause," the Court should disregard it.  See id.

Moreover, probable cause exists even if the Court considers the fugitive's evidence.  The fugitive's claims that Du-yeol was involved in organized crime and his suggestions that Du-yeol is making up the allegations are direct challenges to Du-Yeol's credibility.  It is well established, however, that extradition proceedings are not the proper forum to resolve such credibility challenges.  See e.g., Barapind v. Enomoto, 400 F.3d 744, 750 (9th Cir. 2005) (affirming extraditing court's determination that the "credibility of Makhan Ram's recantation cannot be determined without a trial," which would exceed the limited mandate of an extradition court in making a determination of probable cause, as opposed to ultimate guilt" and stating that extradition courts "do[] not weigh conflicting evidence in making their probable cause determinations.").  Therefore, because the complaint contains probable cause for Charge One and the challenge to Du-yeol's credibility is impermissible at this

1  stage of the proceedings, the Court should extradite the

2  fugitive on Count One.[3]

3      **2.  Charge 3: There is Probable Cause to Believe the**
        **Fugitive Defrauded Kookmin Bank and the Korea**
4      **Guarantee Credit Fund ("KCGF")**

5      Whoever knowingly executes a scheme to defraud a financial

6  institution or obtains funds by means of false or fraudulent

7  pretenses, representations, or promises is guilty of bank fraud.

8  18 U.S.C. § 1344.  Whoever, having devised or intending to

9  devise any scheme or artifice to defraud, transmits or causes to

10 be transmitted by means of wire in interstate commerce any

11 writing for the purpose of executing such fraud is guilty of

12 wire fraud.  18 U.S.C. § 1343.  The representation transmitted

13 must be material, so as to reasonably influence a person to part

14 with money or property.  <u>Neder v. United States</u>, 527 U.S. 1, 25

15 (1999).  Intent to defraud must be proven to obtain a bank fraud

16 conviction; such intent is defined as "acting willfully and with

17 specific intent to deceive or cheat" and may be "proven by

18 circumstantial evidence and by inferences drawn from the scheme

19 itself."  <u>United States v. Moede</u>, 48 F.3d 238, 241 (7th Cir.

20 1995).

21     On September 4, 2000, the fugitive entered into a contract

22 with the Korea Credit Guarantee Fund (KCGF) whereby the KCGF

23 would provided a credit guarantee for 80% of Deltacom's debt

24 incurred for regular business activity.  The next day the

25

26 _____

27     [3]  The government also notes that according to the
   complaint, the fugitive admitted to not returning Du-yeol's
   telephone sets and "admitted [] fault regarding causing damage to
28 the accuser."  (Ex. 1 at 4.2.1.6.).

fugitive represented to Kookmin Bank (KB) that Ohsung
Manufacturer owed Deltacom KRW 214 million and that payment
would be made by February 24, 2001.  In support of the
application, the fugitive showed KB the KCGF credit guarantee
and a note establishing the payment was for a transaction
between Deltacom and DeltaCom Distribution.  Relying upon these
representations KB lent the fugitive KRW 171.2 million.  In
fact, there was no such transaction between Deltacom and
Deltacom Distribution. (Ex. 1 at 3.3).  The fugitive falsified
the note, and the note also contained false or fraudulent
endorsements.  (Id. at 3.3.2.1).  The fugitive never repaid the
debt; as guarantor of the fugitive's debt, KCGF was forced to
pay KB KRW 171.2 million.  (Id.)  On June 1, 2001, Kim Dae Jung,
attorney for KCGF, submitted a written accusation claiming the
fugitive defrauded KCGF of KRW 171.2 million by obtaining a loan
from KB with an account receivable in the amount of 214 million,
when in fact the account receivable was not valid.  (Id. at
3.3.1.1).

     With respect to defrauding Kookmin Bank and the KCGF, the
fugitive claims that probable cause is lacking because "there is
no explanation of the exact actions [the fugitive]" undertook.
(Opp. at 9).  Additionally, according to the fugitive, there is
no explanation of what the fugitive said or who he said it to,
and there is no proof of criminal knowledge.  (Id.).

     Contrary to the fugitive's claims, the complaint
sufficiently alleges probable cause by describing the fraud and
the fugitive's role in the fraud.  Among other things, in order
to obtain a loan from Kookmin Bank (which was guaranteed by the

KCGF), the fugitive, the CEO of Deltacom, submitted to Kookmin Bank a false tax invoice. (Ex. 1 at 3.3.2.1).  That false tax invoice described a transaction which never occurred for the purposes of misleading Kookmin Bank into believing that a customer owed Deltacom money, when, it fact, it did not.  (<u>Id.</u>). Kookmin Bank did lend the fugitive this money which the fugitive never repaid.  (<u>Id.</u>).  As a result, the KCGF had to repay Kookmin Bank the value of the loan and incurred a loss as a result of the fugitive's fraud.  (<u>Id.</u>).  Further, the suspect utilized tools such as email and fax in conducting his business. (Ex. 2 at 3).

Moreover, the fugitive's claim regarding intent ignores the character of intent evidence.  As direct proof of intent is almost never available, the fugitive's intent here can be inferred from the facts that the fugitive was the CEO of Deltacom and that he submitted a falsified document to a bank to get a loan.  <u>See</u> <u>United States v. Santos</u>, 527 F.3d 1003, 1009 (9th Cir. 2008) (discussing intent evidence).  Indeed, the submission of the false tax document is classic fraud and should be dispositive of intent.  Finally, the fugitive's claim there is no evidence of who he spoke to or what he said is without merit because the false tax invoice he submitted to the Kookmin by the fugitive constituted a "false representation" for the purposes of the Bank Fraud Statute and no further statements are necessary.  <u>See</u> 18 U.S.C. § 1344 (defining bank fraud as including obtaining money by means of false or fraudulent pretenses, representations, or promises).

### 3.    Charge 5:  There is Probable Cause to Believe the Fugitive Defrauded Kim Hwan-gyun

Whoever, having devised or intending to devise any scheme or artifice to defraud, transmits or causes to be transmitted by means of wire in interstate commerce any writing for the purpose of executing such fraud is guilty of wire fraud.  18 U.S.C. § 1343.  The representation transmitted must be material, so as to reasonably influence a person to part with money or property. <u>Neder v. United States</u>, 527 U.S. 1, 25 (1999).

On June 12, 2001, accuser Kim Hwan-gyun submitted a written accusation claiming the fugitive and his wife solicited $400,000 (KRW 500 million) from Kim by selling bonds.  (Ex. 1 at 3.5.1.1, 3.5.2.1).  The fugitive issued the bonds with the condition he would repay them after one year whenever the creditor requested payment.  (<u>Id.</u> at 3.5.2.1).  The fugitive represented the funds would be invested in a cellular phone facility.  (<u>Id.</u> at 3.5.1.1).

The fugitive used the investment for personal purposes. (<u>Id.</u> at 3.5.2.1).  On December 21, 2000, one year after the date of issue, Kim demanded repayment of his investment.  (<u>Id.</u>).  On July 9, 2001, Deltacom was declared bankrupt, and the debt was never repaid.  (<u>Id.</u>).  The suspect also utilized tools such as email and fax in conducting his business.  (Ex. 2 at 3).

The statements made by Kim support the charges, as the fugitive's statements regarding where Kim's funds would be invested reasonably induced Kim to invest $400,000 (KRW 500 million) with the fugitive.  After investment, the fugitive

11

1   unlawfully appropriated the funds for his own use, in blatant

2   disregard for the stated purpose of Kim's investment.

3        The fugitive claims that the allegation he defrauded Hwan-

4   gyun out of KRW 500 million "makes no sense" because there is no

5   evidence that the bond issuance was for a particular purpose.

6   (Opp. at 9).  Ignoring the fact that Charge 5 is based on a loan

7   and not a stock, the fugitive then claims that when an investor

8   buys stock in a company, the money goes to the company for its

9   general use and there is no indication here that the money was

10  illegally diverted.

11       The fugitive's arguments fail.  The fraud here is simple.

12  The fugitive borrowed KRW $400 million from Kim Hwan-gyun on

13  condition that, after one year, he would repay the investment at

14  the request of the creditor.  To get the loan, the fugitive

15  represented to Hwan-gyun "if you invest in our company, we will

16  use the investment in the facility of cellular phone.  I will

17  give you a bond with warrant on condition that we will refund

18  the investment one year after that date of issue."  (Ex. 1 at

19  4.2.5.1).  The fugitive further explained that the "cellular

20  phone business was quite successful" and Hwan-gyun believed the

21  fugitive.  (Id.).  In fact, the cellular phone business was not

22  going well, the fugitive did not invest the money in the

23  cellular phone facility, and, contrary to his representations,

24  the fugitive used the money for personal purposes.  (Id.).

25       **4.    Charge 6:  There is Probable Cause to Believe the**
         **Fugitive Concealed Assets After Deltacom was put**
26       **in Bankruptcy**

27       18 U.S.C. § 152(1) states that an individual is guilty of

28  bankruptcy fraud if he "knowingly and fraudulently conceals from

                                    12

a . . . trustee . . . any property belonging to the estate of a debtor."  In order to sustain its burden of proof for the crime of concealing assets in bankruptcy the government must prove beyond a reasonable doubt the following three elements: on or about the date alleged in the indictment, the proceeding in bankruptcy was in existence; defendant fraudulently concealed the property described in the indictment from the bankruptcy court custodian; and the property concealed belonged to the debtor's estate.  2 Fed. Jury Prac. & Instr. § 26:03 (6th ed. 2011).  When a debtor files for bankruptcy, all of the debtor's property becomes part of the bankruptcy estate.  <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638, 642 (1992).  There need not be any actual physical concealment to violate section 152.  It is enough that one withholds knowledge or prevents disclosure or recognition of the asset.  <u>United States v. Porter</u>, 842 F.2d 1021, 1024 (8th Cir. 1988).  Any knowing action which has the effect of concealing an asset of a debtor in bankruptcy may be actionable under section 152.  <u>United States v. Center</u>, 853 F.2d 568, 571–572 (7th Cir. 1988).

Incheon District Court adjudicated Deltacom a bankrupt on July 9, 2001 and appointed Lee Jong-lin trustee in bankruptcy. (Ex. 1 at 3.6.2.1).  Between April 20, 2001 and July 9, 2001, the period of the bankruptcy case, the fugitive concealed in an unknown place from the bankruptcy trustee two company-owned vehicles worth a total of KRW 10 million.  (<u>Id.</u> at 3.6.1.1, 3.6.2.1).  Such concealment during the period of the bankruptcy case satisfies the first two elements of the offense of bankruptcy fraud.  The remaining elements are satisfied as the

13

two vehicles were the fugitive's property at the commencement of bankruptcy proceedings.  (Id. at 3.6.2.1).

The fugitive claims that the bankruptcy fraud charge lacks probable cause because there is no actual "statement" attributed to the fugitive on which to claim fraud and there is no allegation as to what the fugitive did to conceal the two cars. Bankruptcy fraud does not require a "statement."  Here, on April 20, 2001, the bankruptcy proceeding for Deltacom began and the company was ultimately declared bankrupt on July 9, 2001.  (Id. at 4.2.6.1).  According to the complaint, on April 30, 2001, the company-owned vehicles disappeared.  (Id.).  Based on these facts, the trustee alleges that the fugitive "sold the two company-owned vehicles to an unknown person and fled to the United States with the money."  (Id.).  The fugitive's flight shortly after the disappearance of the vehicles is further evidence of his intent and provides a motive – in this case, to obtain funds – for him to dispose of these assets.

Nor does the fugitive's claim that he came to the United States before the bankruptcy became final undermine probable cause.  A violation of § 152(1) can exist where the concealment of funds from the bankruptcy estate occurred even before the appointment of the trustee.  United States v. Sullivan, 522 F.3d 967, 976 (9th Cir. 2008); Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1255 (1st Cir. 1991) (transfers made nine months before a bankruptcy proceeding were sufficient to show a violation of § 152(1)); Arine v. United States, 10 F.2d 778, 779 (9th Cir. 1926).

14

**B.    The Statute of Limitations Has Not Run**

The fugitive claims that the crimes alleged are barred by the statute of limitations.  (Opp. 10).  Specifically, the fugitive claims that the statute should not be tolled because the fugitive did not flee to avoid arrest.  According to the fugitive, after an arrest related to the instant matter, he was released from police custody and was unaware of any charges until his arrest this year.

**1.    The Statute of Limitations Period Ended Once South Korea Summonsed the Fugitive to Answer for His Crimes**

The statute of limitations has not run.  As noted in the complaint, the Republic of Korea has different procedures for charging a suspect.

> Under the law of the Republic of Korea, when a suspect who committed a crime of felony like Han Gang-choon, a prosecutor does not indict the case and strives to secure the custody of the suspect, by requesting for issuance of an arrest warrant *or* putting the suspect on the wanted list.  As the suspect is indicted after his custody is secured, there are no indictment-related documents in this case.

(Ex. 1 at 6.1).  An arrest warrant based on probable cause is not issued until "there is a possibility the suspect will not comply with the summons."  (Id. at 6.2).

Because the Republic of Korea initiates criminal proceedings through this summons process and by placing fugitives on the wanted list, this is the operative date for the purposes of the statute of limitations.  See In re Sainez, 2008 U.S. Dist. LEXIS 9573, 23-24 (S.D. Cal. Feb. 8, 2008) (Mexican arrest warrant began criminal procedures and noting that court should not apply U.S. concept of charging documents to Mexican

15

judicial system); <u>Restatement (Third) of Foreign Relations Law</u> § 476 cmt. e (1987) ("For purposes of applying statutes of limitation to requests for extradition . . . the period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state, or of the filing of the request for extradition, whichever occurs first."). For each of the four crimes alleged in the request for extradition, South Korean prosecutors summonsed the fugitive and placed him on the wanted list, within any possible applicable statute of limitations.[4]

> **2.  The Statute of Limitations does not Extend to the Fugitive in any event because he Fled from Justice**

In any event, the fugitive left the Republic of Korea to flee justice and should the Court deem tolling necessary, it is appropriate here. Title 18, United States Code, Section 3290, provides that "[n]o statute of limitations shall extend to any person fleeing from justice." The Ninth Circuit has held that for tolling to apply, the fugitive must have intended to

---

[4]  The statutes of limitations in the Republic of Korea is seven years. (Ex. 1 at 5.3.4). In the United States, the statute of limitations is ten years for bank fraud, 18 U.S.C. § 3293, five years for wire fraud, 18 U.S.C. § 3293, and four years for grand theft, Cal. Penal Code § 801.5.

For Charge One, the fugitive was summonsed on May 18, 2001 and placed on the wanted list on June 8, 2001. (Ex. 1 at 3.1.2.7, 3.1.2.9). For Charge Three, the fugitive was summonsed on an unknown date and placed on the wanted list on July 26, 2001. (Ex. 1 at 3.3.2.2). For Charge Five, the fugitive was summonsed on an unknown date and placed on the wanted list on October 10, 2001. (Ex. 1 at 3.5.5.2). For Charge Six, the fugitive was summonsed on an unknown date and placed on the wanted list on March 22, 2002. (Ex. 1 at 3.6.2.2).

flee justice.  <u>Man-Seok Choe v. Torres</u>, 525 F.3d 733, 741 (9th Cir. 2008); <u>Caplan v. Vokes</u>, 649 F.2d 1336, 1341 (9th Cir. Cal. 1981).  Under 18 U.S.C. § 3290, the evidentiary standard is preponderance of the evidence.  <u>Jhirad v. Ferrandina</u>, 536 F.2d 478, 484-485 (2nd Cir. 1976).  It is well settled that one can flee from justice for purposes of tolling the statute of limitations even if no charges are pending at the time of flight.  <u>United States v. Ballesteros-Cordova</u>, 586 F.2d 1321, 1323 (9th Cir. 1978) (per curiam).

Issues of intent, including the intent to flee, can rarely be proven by direct evidence.  Rather, they must be inferred based on the totality of the circumstances.  <u>Santos</u>, 527 F.3d at 1009 (9th Cir. 2008) ("The government is not required to produce direct evidence of the defendant's intent; rather, it may provide circumstantial evidence from which the district court can draw reasonable inferences.").

There is significant evidence here establishing that the fugitive intended to flee justice.  On May 18, 2001, after he had been arrested, questioned, and released by authorities on an earlier occasion, the fugitive was summonsed by prosecutors in the South Korea to answer for theft from Du-yeol. (Ex. 1 at 3.1.2.7).  The fugitive did not answer the summons, cooperate in the investigation, or wait for the investigation to be completed.  Rather, five days after the summons was sent to the fugitive, he left and came to the United States -- permanently. (Opp. 10 ("Han went to the United States on May 23, 2001.")). This single fact should be dispositive of the fugitive's intent. Just as flight is a legitimate ground from which to infer guilt

17

and may be used in the consideration of probable case, <u>Eain v. Wilkes</u>, 641 F.2d 504, 511 (7th Cir. 1981), flight and the particular date of the fugitive's departure here is probative of the fugitive's intent to flee justice.

The circumstances under which the fugitive left South Korea are further evidence of his intent to flee justice.  Just before leaving, the fugitive is alleged to have stolen phones from Du-yeol, submitted false documents to Kookmin Bank for the purposes of obtaining a loan, obtained loans by false pretenses, and sold two trucks belonging to Deltacom after bankruptcy proceedings were initiated.  The fugitive knew that Du-yeol had been making complaints to law enforcement issues and even declared that law enforcement officers "believed" Du-yeol.  In addition to these allegations which were included in the extradition complaint, there were numerous charges the United States did not include but which were criminal violations in the Republic of Korea that occurred around this same time.  The fugitive also knew that law enforcement officers were investigating these crimes as he had been arrested, questioned, and released on at least one occasion.

There is no evidence – none – that the fugitive intended to relocate prior to his criminal conduct, the investigation, or the sending of the summons.  Indeed, the fugitive's actions since arriving in the United States are also evidence of is intent to flee justice.  The fugitive brought his family over suggesting he had no intent to return to South Korea.  Since coming to the United States, the fugitive never returned to his country.  Not once.

1    The only evidence contrary is that the fugitive lived

2    openly in the United States.  As recognized by the Ninth

3    Circuit, however, this Court should accord this fact minimal

4    weight because "the fact that he could have taken additional

5    steps to conceal his whereabouts does not mean that [extraditee]

6    was not a fugitive from justice.  He may have felt safe enough

7    being thousands of miles away from the government that was

8    seeking to prosecute him." Man-Seok Choe v. Torres, 525 F.3d

9    733, 741 (9th Cir. 2008).  In any event, this single fact does

10   not undermine the other facts establishing that the fugitive

11   came to the United States to flee justice.

12   **III. THE COURT MAY NOT CONSIDER THE FUGITIVE'S CLAIMS OF
          CORRUPTION OR AFFILIATION WITH ORGANIZED CRIME**

13

14       The fugitive also claims that he should not be extradited

15   because of the "threats and dangers" he would face in South

16   Korea.  He also claims "apparent police corruption" is another

17   reason he should not be extradited.

18       The Court cannot consider such claims under the rule of

19   non-inquiry.  The Rule of Non-Inquiry provides that "it is the

20   role of the Secretary of State, not the courts, to determine

21   whether extradition should be denied on humanitarian grounds or

22   on account of the treatment that the fugitive is likely to

23   receive upon his return to the requesting state." Garcia v.

24   Benov, 395 Fed. Appx. 329, 330 (9th Cir. 2010) (citing

25   Cornejo-Barreto v. Siefert, 379 F.3d 1075, 1084 (9th Cir. 2004)

26   ("Cornejo II"), vacated by Cornejo-Barreto v. Siefert, 389 F.3d

27   1307 (9th Cir. 2004)).  This Court lacks discretion to inquire

28   into the conditions that might await a fugitive upon return to

1   the requesting country and the fugitive's suggestion that the

2   Court should rule on this basis invites error.  See Prasoprat v.

3   Benov, 421 F.3d 1009, 1016 (9th Cir. Cal. 2005).  Once the Court

4   determines that the crime is extraditable and there is probable

5   cause to sustain the charge, "it is the Secretary of State,

6   representing the executive branch, who determines whether to

7   surrender the fugitive."  Id.

8   <center>**IV**</center>

9   <center>**CONCLUSION**</center>

10     For the foregoing reasons, the United States requests the

11   certification of the fugitive, GANG-CHOON HAN, for extradition

12   to the Republic of Korea.

14   DATED: August 25, 2011

15                     Respectfully submitted,

16                     ANDRÉ BIROTTE JR.
United States Attorney

17                     ROBERT E. DUGDALE
Assistant United States Attorney

18                     Chief, Criminal Division

19                     DOROTHY KIM
Assistant United States Attorney

20                     International Coordinator

22                     /s/
DAVID L. KIRMAN
Assistant United States Attorney

23                     Major Frauds Section

24                     Attorneys for Complainant
UNITED STATES OF AMERICA