

FILED · SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN - 6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ) EXTRADITION OF GANG-CHOON HAN, ) <br><br> A fugitive from the Republic ) of Korea. ) <br><br> ) ) ) ) | Case No. CV 11-2059-DMG (MLG) <br><br> MEMORANDUM AND ORDER GRANTING REQUEST FOR EXTRADITION |

Before the Court is a request for extradition brought by the Republic of Korea ("Korea"), the requesting state, against Gang-Choon Han. Pursuant to an extradition treaty between the United States and Korea, the United States acts on behalf of Korea in this matter. *See* Extradition Treaty Between The Government of the United States of America and the Government of the Republic of Korea, Dec. 10, 1999, art. 18; 18 U.S.C. § 3181 ("Extradition Treaty" or "Treaty").

## I. Procedural Background

On February 25, 2011, a complaint was filed by the United States alleging that Gang-Choon Han was the subject of an extradition request made by Korea. Case No. CV 11-0411-M. Korea's formal extradition

request for Han's surrender was filed as an attachment to the complaint. The same day, a warrant was issued under 18 U.S.C. § 3184 for the arrest of Han. Pursuant to the warrant, Han was arrested in this judicial district on March 7, 2011. Han, a Korean citizen and U.S. resident alien since 2001, is accused by Korea of having committed the following crimes in Korea: 1) occupational embezzlement of telephone sets; (2) fraud against Kookmin Bank and the Korea Guarantee Credit Fund; (3) fraud against Kim Hwan-gyun and violation of the Act on the Aggravated Punishment, etc., of Specific Economic Crimes; and (4) occupational embezzlement of two company-owned vehicles.[1]

On March 8, 2011, Han was brought before United States Magistrate Judge Margaret A. Nagle for an initial appearance and was ordered detained without bond. On June 13, 2011, Han filed a motion for release on bail. After a bail hearing on June 22, 2011, it was ordered that Han be examined by physicians and that a report be submitted regarding Han's medical conditions. Following a second bail hearing on July 12, 2011, the Court issued an order on August 22, 2011, finding that Han's poor health constituted a special circumstance sufficient to overcome the presumption against bail and releasing Han on bail.

Han filed his first Opposition to Extradition ("Opposition") on May 6, 2011, and on August 25, 2011, the United States filed a Reply

---

[1] While no formal charges have been filed in Korea as to these four crimes, Han has been placed on a "wanted list" for each of them. In Korea's formal extradition papers, Prosecutor Lee Soon-ok explains that under Korean law a suspect is indicted only after his custody is secured. Accordingly, there are no indictment-type documents in this case. (Formal Extradition Papers Exhibit 1 at 40). He further explains that when attempting to secure the custody of a suspect, a prosecutor in Korea can request the issuance of an arrest warrant or put the suspect on the wanted list. (Id.)
    The Treaty between the United States and Korea allows requests for extradition to be supported by either a copy of the warrant or order of arrest, or a copy of the charging document. Treaty, art. 8(3).

("First Reply"). On November 21, 2011, Han filed a "Supplement to Opposition to Extradition" (hereinafter "Supplement") with several exhibits attached.[2] On November 28, 2011, Han filed updated versions of some of the exhibits that had been filed on November 21, and on November 29, 2011, he filed additional exhibits. The United States filed a second Reply ("Second Reply") on December 2, 2011. An extradition hearing was held before this Court on December 6, 2011. After considering the parties' respective papers, evidence, and oral arguments, the matter was taken under submission. For the reasons discussed below, the Court issues this Memorandum and Order certifying Han's extradition to Korea.

## II.   The Crimes Alleged[3]

Korea alleges that Han committed multiple financial crimes as the CEO of Deltacom, a technology company specializing in the design and manufacturing of telephones. While Korea alleges seven charges against Han in its Formal Extradition Papers ("FEP"), the United States asserts only the following four charges as the basis for its extradition

---

[2] The Court declines to consider Han's Exhibit A, a memorandum authored by Jong Kun Lee, a former Korean prosecutor. The memorandum offers legal conclusions regarding issues that are the province of this Court to decide and not subject to opinion testimony. To the extent the memorandum also seeks to offer an expert opinion regarding factual issues, this opinion lacks foundation. Where specific portions of the Memorandum are incorporated into the Supplement to Opposition to Extradition, they will be considered as argument but not given any evidentiary weight.

[3] The facts that follow are taken from the allegations made by Lee Soon-ok, Prosecutor of the Bucheon Branch of Incheon District Prosecutor's Office under the Korean Ministry of Justice, in support of Korea's formal request for the extradition of Han.

1    request.[4]

2         **A.    Occupational Embezzlement of Telephone Sets**

3         In October 2000, the CEO of JinainTech Corporation, Roh Du-yeol,

4    asked Han to repair several thousand telephone sets that Roh Du-yeol

5    had purchased from Deltacom. (FEP at 3-5).[5] While in possession of the

6    telephone sets purchased by Roh Du-yeol, Han instructed his employee,

7    Kim Hyeon-tae, to sell the majority of them to third parties. (*Id.*).

8    Over the next few months, Kim Hyeon-tae sold the sets, and only a small

9    portion of them were returned to Roh Du-yeol. (*Id.*).

10        On March 8, 2001, Roh Du-yeol submitted a written statement to the

11   Bucheon Branch of the Incheon District Prosecutors' Office alleging

12   that Han sold his telephone sets and embezzled the proceeds rather than

13   repair them. (*Id.* at 3). A judicial police officer of the Republic of

14   Korea reviewed the statement and on April 6, 2001, confirmed the facts

15   alleged through a statement from Kim Hyeon-tae. (*Id.* at 5). Han also

16   gave a statement to a police officer stating that only 300 of the

17   thousands of telephone sets sold belonged to Roh Du-yeol and that the

18   other sets belonging to Roh Du-yeol were being kept at Deltacom. (*Id.*

19   at 6-7). However, the telephone sets were not found during a police

20   search of Deltacom's warehouse. (*Id.* at 7).

21        On May 18, 2001, the prosecutor requested a warrant of arrest

22   against Han and a summons was issued. Han never answered the summons.

23   (*Id.*). On June 8, 2001, Prosecutor Kim Ji-heon put Han on the wanted

24   _____

25        [4] At the December 6, 2011 extradition hearing, the United States
     clarified that it was not seeking extradition based on the remaining
26   three counts because they do not satisfy the dual criminality
     requirement.
27

28        [5] Unless otherwise noted, all page number references are to Exhibit
     1 of the FEP.

                                      4

list. (*Id.*).

**B.** **Fraud Against Kookmin Bank and the Korea Guarantee Credit Fund**

On September 4, 2000, Han entered into a surety contract with the Korea Guarantee Credit Fund ("KCGF"), whereby KCGF would provide a credit guarantee for eighty percent of Deltacom's debt incurred for regular business activity for one year. (FEP at 10). The next day, Han sought a loan from Kookmin Bank ("KB"). (*Id.* at 10-11). In support of the loan application, Han presented KB with a promissory note demonstrating that Deltacom was owed 214 million South Korean Won ("KRW") and a tax invoice related to the transaction. (*Id.* at 11). Relying upon these representations, KB lent Han 214 million KRW. However, Han never repaid the loan to KB. Therefore, KCGF, as guarantor of Han's debt, was forced to pay KB 171.2 million KRW, or eighty percent of the amount owed. (*Id.* at 12-13).

On June 1, 2001, KCGF submitted a written statement to the Prosecutor's Office claiming that Han had engaged in fraud by deceiving KB when securing the loan. (*Id.* at 9-10). Han had allegedly falsified the documents shown to KB for the purpose of misleading KB into believing that a customer owed Deltacom money when, in fact, it did not. On June 14, 2001, judicial officer Lim Won-sang confirmed the facts in the written statement. (*Id.* at 10). On an unknown date, the Prosecutors' Office issued a summons for Han, which Han never answered. (*Id.* at 13). On July 26, 2001, Prosecutor Kim Heyon-chae put Han on the wanted list. (*Id.*).

//
//
//

C. **Fraud Against Kim Hwan-gyun and "Violation of the Act on the Aggravated Punishment, etc., of Specific Economic Crimes"**

In November 1999, Kim Hwan-gyun gave Han a loan[6] worth USD 400,000 on the condition that after one year Han would repay the loan upon Kim's request. (FEP at 16). In order to get the loan, Han told Kim that the money would be invested in Deltacom's cellular phone facility and that the cellular phone business was "quite successful". (*Id.* at 17, 34). Instead, Han used the money for personal expenses. (*Id.* at 16). On December 21, 2000, Kim Hwan-gyun demanded repayment of the loan, but the loan was never repaid (FEP at 16-17, Exhibit 2 at 5).

On June 12, 2001, Kim Hwan-gyun submitted a written statement to the Uijeongbu Branch of the Incheon Prosecutors' Office claiming that Han had engaged in fraud by deceiving Kim Hwan-gyun when securing the loan. (*Id.* at 15-16). Contrary to Han's representations to Kim Hwan-gyun, the cellular phone business was not going well, and Han did not invest the money in the cellular phone facility as promised. (*Id.* at 17). The case was transferred to the Bucheon Branch of the Prosecutor's Office. (*Id.* at 17). On an unknown date, the Prosecutors' Office issued a summons for Han, which Han never answered. (*Id.*). On October 10, 2001, Prosecutor Kim Heyon-chae put Han on the wanted list. (*Id.*).

D. **Occupational Embezzlement of Two Company-Owned Vehicles**

On July 9, 2001, Deltacom was declared bankrupt by an Incheon District Court and Lee Jong-lin was appointed as the bankruptcy trustee. (FEP at 18). Acting as trustee, Lee Jong-lin discovered that two company-owned vehicles were missing. (FEP at 35).

On January 22, 2002, Lee Jong-lin submitted a written statement to

---

[6] The FEP uses the term "Bond with warrant." In the context used, the term appears to signify a loan.

6

1  the Prosecutor's Office in which he alleged that sometime just before
2  the bankruptcy was declared "Han Gang-choon sold two company-owned
3  vehicles to an unknown person and fled to the United States with the
4  money." (*Id.* at 36). On an unknown date, the Prosecutors' Office issued
5  a summons for Han, which Han never answered. (*Id.* at 19). On March 22,
6  2002, Prosecutor Lee Heun-jae put Han on the wanted list. (*Id.*).

## II.  Discussion

### A.  Legal Standard

Extradition from the United States is governed by 18 U.S.C. §
3184, which confers jurisdiction on "any justice or judge of the United
States" or any authorized magistrate judge to conduct an extradition
hearing under the relevant extradition treaty between the United States
and the requesting nation.[7] The purpose of the extradition hearing is

---

[7] 18 U.S.C. § 3184 provides that:

Whenever there is a treaty or convention for extradition between
the United States and any foreign government, or in cases arising under
section 3181(b), any justice or judge of the United States, or any
magistrate judge authorized so to do by a court of the United States,
or any judge of a court of record of general jurisdiction of any state,
may, upon complaint made under oath, charging any person found within
his jurisdiction, with having committed within the jurisdiction of any
such foreign government any of the crimes provided for by such treaty
or convention, or provided for under section 3181(b), issue his warrant
for the apprehension of the person so charged, that he may be brought
before such justice, judge, or magistrate judge, to the end that the
evidence of criminality may be heard and considered. Such complaint
may be filed before and such a warrant may be issues by a judge or
magistrate judge of the United States District Court for the District
of Columbia if the whereabouts within the United States of the person
charged are not known or, if there is reason to believe the person will
shortly enter the United States. If, on such hearing, he deems the
evidence sufficient to sustain the charge under the provisions of the
proper treaty or convention, or under section 3181(b), he shall certify
the same, together with a copy of all the testimony taken before him,
to the Secretary of State, that a warrant may issue upon the
requisition of the proper authorities of such foreign government, for
the surrender of such person, according to the stipulations of the
treaty or convention; and he shall issue his warrant for the commitment

to determine whether a person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. *See* 18 U.S.C. § 3184. In order to surrender the person to the requesting country, the Court must determine that each of the following requirements have been met: (1) the extradition magistrate has jurisdiction to conduct the extradition proceedings; (2) the extradition magistrate has jurisdiction over the fugitive; (3) an extradition treaty is in full force and effect; (4) the crime is extraditable (the dual criminality requirement); (5) there is probable cause to believe that the individual appearing before the magistrate judge has committed the crimes alleged by the requesting nation (the probable cause requirement); and (6) there are no applicable treaty provisions which bar the extradition for any of the charged offenses. *See Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000); *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009-10 (9th Cir. 2000); *Quinn v. Robinson*, 783 F.2d 776, 783, 790 (9th Cir. 1986); *Zanazanian v. U.S.*, 729 F.2d 624, 626 (9th Cir. 1984).

If these requirements are met, the extradition magistrate must certify the individual as extraditable to the Secretary of State and issue a warrant of commitment. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003). Once such a certification has been made, "it is the Secretary of State, representing the executive branch, who determines whether to surrender the fugitive." *Blaxland*, 323 F.3d at 1208; 18 U.S.C. § 3184. Extradition is a matter of foreign policy entirely within the

---

of the person so charged to the proper jail, there to remain until such surrender shall be made.

discretion of the executive branch, and "the executive branch's ultimate decision on extradition may be based on a variety of grounds, ranging from individual circumstances, to foreign policy concerns, to political exigencies." *Blaxland*, 323 F.3d at 1208.  Thus, the authority of the extradition magistrate is limited to the judicial determination required by section 3184.

**B.   <u>The Judicial Officer is Authorized to Conduct the Extradition Proceedings</u>**

Pursuant to section 3184 and General Order No. 01-13,[8] this Court has jurisdiction to preside over the extradition of Han.  This issue was not challenged by Han.

**C.   <u>The Court Has Jurisdiction Over the Fugitive</u>**

Pursuant to section 3184, this Court has jurisdiction over Han, who is "found within [this] judicial district," because he was arrested, and is presently detained, in the Central District of California. This issue was not challenged by Han.

**D.   <u>There is an Applicable Treaty in Full Force and Effect</u>**

The parties do not dispute, and this Court expressly finds, an extradition treaty between the United States and Korea is in full force and effect. *See* 18 U.S.C. § 3181 (Historical and Statutory Notes). The Treaty applies to offenses committed before and after the date it entered into force. Treaty, art. 20.

//

**E.   <u>Extraditable Offense - The Dual Criminality Requirement</u>**

---

[8]  United States District Court for the Central District of California General Order No. 01-13 authorizes this Court's magistrate judges to preside over "[e]xtradition proceedings pursuant to 18 U.S.C. 3181 et seq."

"[U]nder the doctrine of 'dual criminality,' an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations." *Quinn*, 783 F.2d at 786-87. The dual criminality principle is explicitly incorporated into Article 2 of the Extradition Treaty, which provides that: "[a]n offense shall be an extraditable offense if, at the time of the request, it is punishable under the laws in both the Contracting States by deprivation of liberty for a period of more than one year, or by a more severe penalty." Treaty, art. 2(1).

The principle of dual criminality does not require that the name by which the crimes are described in the requesting and the requested states be the same, nor does it require that the scope of criminal liability be coextensive. *Collins v. Loisel*, 259 U.S. 309, 312 (1922). "It is enough if the particular act charged is criminal in both jurisdictions." *Id.* at 312. In determining whether the act charged is criminal in both jurisdictions, the "totality of the conduct alleged" must be taken into account. Treaty, art. 2(3). Moreover, an offense is extraditable whether or not the laws in the contracting states "place the offense within the same category of offenses or describe the offense by the same terminology," and whether or not the constituent elements differ under the laws of the contracting states, provided "that the offenses under the laws of both states are substantially analogous." Treaty, art. 2(3)(b)(c); *see also U.S. v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993) ("Many cases have held that dual criminality is satisfied even though the names of the crimes and the required elements were different in the two countries"); *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450 (9th Cir. 1987) (required elements may be different in the requesting and requested nations as long as

10

1  "substantive conduct each statute punishes is functionally identical");
2  *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981) ("The crimes
3  need not be identical").

### 1. Occupational Embezzlement of Telephone Sets

5  Korean law provides that the crime of embezzlement occurs when "A
6  person who, having the custody of another's property, embezzles or
7  refuses to return it." (FEP at 37). The crime of occupational
8  embezzlement occurs when a person commits embezzlement "in violation
9  of the duties of one's occupation." (*Id.*). The United States argues
10  that the U.S. analog is grand theft by embezzlement. (First Reply at
11  3). Under California law "Every person who shall feloniously steal,
12  take, carry, lead, or drive away the personal property of another...is
13  guilty of theft," and such theft occurs by embezzlement provided (1)
14  the property owner entrusted property to the defendant; (2) the owner
15  did so because he trusted the defendant; (3) the defendant fraudulently
16  converted that property for his own benefit; and (4) when the defendant
17  converted the property, he intended to deprive the owner of its use."
18  Cal. Penal Code § 484, Judicial Council of Cal. Jury Instructions
19  (CALJIC) No. 1806. Grand theft is committed when "the money, labor, or
20  real or personal property taken is of a value exceeding nine hundred
21  fifty dollars...." Cal. Penal Code § 487. In its Second Reply, the
22  United States further argues that grand theft by embezzlement is just
23  one of many analog crimes the fugitive could have been charged with in
24  the United States. (Second Reply at 15).

25  In his Supplement to Opposition to Extradition, Han argues that
26  with respect to this first charge, "there is no criminality under
27  Korean law" and "[t]here is no criminality based on California Law."
28  (Supplement at 4-5). Han argues that under California law, the crime

of embezzlement requires a trust relationship between the parties and that in this case, the evidence submitted by Korea has not shown that Deltacom was in a trust relationship with Jinaintech. (Supplement at 5). To the extent these arguments challenge whether dual criminality exists, these arguments fail.

Here, it appears that the Korean embezzlement statute may be broader than California's embezzlement statute, given that California's statute requires a "trust" element that the Korean statute does not contain on its face. However, the fact that Korea's statute is broader than the U.S. analog is not dispositive. *See, e.g., Clarey v. Gregg*, 138 F.3d 764 (9th Cir. 1998)(upholding extradition even though requesting nation's murder statute was broader than felony murder because the facts alleged murder took place during robbery). The focus of the dual criminality requirement is on the conduct charged. Here, the allegations include facts that appear to satisfy the "trust" element of California's embezzlement statute, such as the fact that Roh Du-yeol and Han maintained an ongoing business relationship and that Roh Du-yeol entrusted Han with his property. (FEP at 2-5). Because Han is charged with conduct that if proven would constitute embezzlement under the narrower California law, it is of no import that the scope of criminal liability under the two statutes is not coextensive. *See Collins*, 259 U.S. at 312.

Furthermore, even if the facts alleged do not satisfy the trust element of embezzlement under California law, there are other analog crimes that do not require trust with which Han could be charged. For example, the conduct that Han is accused of - selling phones belonging to Roh Du-yeol and keeping the profits - constitutes theft under California law. *See* Cal. Penal Code § 484 ("every person who shall

1  feloniously steal, take, carry, lead, or drive away the personal
2  property of another...is guilty of theft"); *see also*, CALJIC No. 14.05
3  ("Theft by Trick and Device").

4       Accordingly, the dual criminality requirement with respect to the
5  first alleged offense is satisfied.

### 2. Fraud Against KB and the KGCF

7       Han does not contest, and the Court finds, that Korea's
8  allegations of Han's conduct as to the second offense satisfies the
9  dual criminality requirement.

### 3. Fraud Against Kim Hwan-gyun and "Violation of the Act on the Aggravated Punishment, etc., of Specific Economic Crimes"

12      Korean law provides that fraud occurs when a person "receives
13 property or obtains pecuniary advantage from a third person in response
14 to an illegal solicitation concerning his duty." (FEP at 37-38). A
15 Person who commits fraud violates the Act on the Aggravated Punishment,
16 etc. of Specific Economic Crimes when "the value of the goods or
17 profits on property which he gains...is five hundred million won or
18 more." (*Id.* at 38). The United States argues that the analog crime is
19 wire fraud under 18 U.S.C. §1343, which provides that "Whoever, having
20 devised or intending to devise any scheme or artifice to defraud,
21 transmits or causes to be transmitted by means of wire in interstate
22 commerce any writing for the purpose of executing such fraud is guilty
23 of wire fraud."

24      Han argues that there is no criminal duality as to this offense
25 because in the United States, "the management of a company filing for
26 bankruptcy protection is not personally liable, either criminally or
27 civilly, for bonds issued by the company." (Opposition at 7). However,
28 Han's argument misunderstands the nature of the crime charged. Han's

1  criminal liability is based on the alleged misrepresentations that he
2  made to Kim Hwan-gyun in order to obtain the loan, and not on the
3  failure to repay the money.

4      The laws of both countries criminalize the type of conduct that
5  is at issue here. Therefore this Court finds that Korea's allegations
6  satisfy the dual criminality requirement as to this offense.

7          **4. Occupational Embezzlement of Two Company-Owned Vehicles**
8      Han does not contest, and the Court finds, that Korea's
9  allegations of Han's conduct as to the fourth offense satisfy the dual
10 criminality requirement.

11     **F.    Probable Cause**

12     The government requesting extradition has the burden of producing
13 "such information as would provide reasonable grounds to believe that
14 the person sought has committed the offense for which extradition is
15 requested." Treaty, art. 8(3)(c); *see also Barapind*, 360 F.3d at 1068-
16 70 (the probable cause element requires the extradition magistrate to
17 find reasonable ground to believe the accused is guilty of the crimes
18 charged). The burden is met if there is *any* evidence warranting the
19 extradition court to make such a finding. *See Barapind*, 360 F.3d at
20 1068; *Quinn*, 783 F.2d at 790 (citing *Fernandez v. Phillips*, 268 U.S.
21 311, 312 (1925)). Further, the requesting nation is not required to
22 present all of its evidence at an extradition hearing. *Quinn*, 783 F.2d
23 at 815.

24     An extradition magistrate "does not weigh conflicting evidence and
25 make factual determinations." (*Id.*). The ultimate question of guilt or
26 innocence is left to the country requesting extradition. *See e.g.*,
27 *Collins*, 259 U.S. at 316; *Quinn*, 783 F.2d at 815. Moreover, it is well-
28 settled that the rules of evidence, other than with respect to

1  privileges, do not apply in extradition proceedings. FED. R. EVID.
2  1101(d)(3); *see also*, *Collins*, 259 U.S. at 317 (unsworn statements of
3  absent witnesses may be acted upon by extradition magistrate although
4  they could not have been received by him under the law of the state on
5  a preliminary examination); *Mainero v. Gregg*, 164 F.3d 1199, 1206 (9th
6  Cir. 1999) (evidence in an extradition proceeding is not incompetent
7  simply because it is hearsay); *Emami*, 834 F.2d at 1451 ("In the Ninth
8  Circuit it has been repeatedly held that hearsay evidence that would
9  be inadmissable for other purposes is admissible in extradition
10 proceedings").

11      Korea's formal extradition request contains a statement from
12 Persecutor Lee Soon-ok detailing the facts underlying the claims
13 against Han and the evidence supporting those facts. As the prosecutor
14 in charge of the case against Han, Lee Soon-ok examined statements from
15 the suspect and witnesses and the reports of investigators prior to
16 authoring his statement (hereinafter the "Prosecutor's Statement").
17 (FEP at 1).

18      As an initial matter, Han argues that the government must provide
19 the underlying statements by witnesses that support the allegations
20 made against him. (Opposition at 9). Contrary to Han's assertion, the
21 fact that most of the evidence submitted by Korea is in the form of
22 testimony as recited by the prosecutor does not render that testimony
23 incompetent or otherwise inadmissable in this proceeding. An
24 extradition request may be based entirely on an investigator's
25 affidavit summarizing other witness' statements and information, as
26 long as such evidence is properly authenticated. *Emami*, 834 F.2d at
27 1451 (foreign prosecutor's affidavit with summaries of statements
28 admissible); *Zanazanian v. U.S.*, 739 F.2d 624, 627 (9th Cir. 1984)

15

(police reports containing multiple hearsay considered sufficiently reliable to be competent). The evidence presented in Korea's formal extradition papers is facially authenticated under 18 U.S.C. § 3190, which provides, in relevant part, that:

> "The certificate of the principal diplomatic or consular officer of the United States who is resident in the demanding country constitutes proof that the documents offered are properly authenticated. Under this statute, a consular certificate is conclusive proof that the documents have been properly authenticated as admissible in a criminal proceeding in the demanding country, and the accused is not allowed to present testimony that the documents would not be admissible under the law of the foreign country."

Article 9(a)(b) of the Treaty incorporates the same principles of authentication by requiring that the documents accompanying the extradition request be admitted into evidence in an extradition proceeding when "they are certified by the principal diplomatic or consular officer of the Requested State resident in the Requesting State; or [when] they are certified or authenticated in any other manner accepted by the law of the Requested State."

The documents submitted by Korea in support of its extradition request were certified on March 27, 2009, by the Minister of Justice in Seoul, a manner of certification or authentication accepted by the law of Korea. (FEP Exhibit 1). Thus, any attack by Han on the competency of the evidence fails.

//

//

## 1. <u>Occupational Embezzlement of Telephone Sets</u>

16

The facts underlying the claim that Han embezzled phones belonging to Roh Du-yeol are presented above in Section II and will not be repeated here. The Prosecutor's Statement explains that these facts were confirmed through the following documents and statements, among others: a letter of commitment written by Han, a tax invoice, a certification of an exclusive sales contract, a purchase order from Roh Du-yeol, and statements from Roh Du-yeol, Kim Hyeon-tae (a Deltacom employee), and Han himself. (FEP Exhibit 1 at 3-7). Additionally, a search of Deltacom's warehouse revealed that the phones were not there despite Han's statement to police that the phones were at the warehouse. (*Id.* at 6-7).

While Han has offered a number of arguments in support of his assertion that probable cause has not been met as to this first count, none of them are persuasive. First, Han provides a lengthy description of Roh Du-yeol's activities as an "organized crime gangster," which include a series of threats and violence directed at Han and his family. (Opposition at 3-6). Han also offers a statement from Kim Hyun-tae corroborating these facts. (Supplement Exhibit F). However, this type of evidence, offered to discredit Roh Du-yeol and to contradict his version of the events, is not the type of evidence that the Court may consider. *See, e.g., Quinn,* 783 F.2d at 815; *Barapin,* 400 F.3d at 749 ("Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible.") (quoting *Mainero,* 164 F.3d at 1207 n. 7)); *In re Extradition of Mainero,* 990 F.Supp. 1208, 1218 (S.D.Cal. 1997) ("Evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is

1  impeachment of the credibility of the demanding country's witnesses.").

2  For similar reasons, the Court will not consider the arguments Han
3  makes regarding why "there is no criminality based on Korean Law" and
4  "the chronology of events do not support the charge." (Supplement at
5  4-6). These attempts to offer alternative explanations for the events
6  that occurred and to introduce evidence in Han's defense are not
7  appropriate at the extradition stage. *See Barapin*, 400 F.3d at 749;
8  *Collins*, 259 U.S. at 315 (explaining that the accused does not have the
9  right to introduce evidence in his defense in an extradition
10 proceeding).

11 Accordingly, Korea has met its burden in producing information
12 providing reasonable grounds to believe that Han has committed
13 Occupational Embezzlement.

14 ## 2. Fraud Against KB and the KGCF

15 The Prosecutor's statement explains that the facts underlying the
16 claim that Han defrauded KB and the KGCF, also discussed above in
17 Section II, were confirmed through the following items: a statement
18 from KGCF's attorney, a tax invoice, a promissory note, the certificate
19 of credit guarantee, and the certificate of subrogation. (FEP at 10).
20 A copy of at least one of these documents is included in Korea's
21 extradition request, along with an English translation. (FEP Annex 5).

22 Han protests that the evidence supplied by Korea in support of
23 this claim is based on hearsay and speculation. (Supplement at 6).
24 However, hearsay evidence is admissible at an extradition hearing. *See*
25 *Mainer*, 164 F.3d at 1206 (evidence in an extradition proceeding is not
26 incompetent simply because it is hearsay); *Emami*, 834 F.2d at 1451 ("In
27 the Ninth Circuit it has been repeatedly held that hearsay evidence
28 that would be inadmissable for other purposes is admissible in

18

extradition proceedings"). Additionally, the evidence is not improperly based on speculation. Rather, it is based on circumstantial evidence, documents, and witness statements. Thus, this evidence is appropriate for the Court to consider in making its probable cause determination.

Han also argues that the Korean authorities failed to adequately investigate countervailing evidence that would have undermined the facts supporting the claim against him. (Supplement at 6). However, probable cause is shown if there is there is *any* evidence warranting a finding that the person sought committed the offense. *See, e.g.,* *Barapind,* 360 F.3d at 1068. Here, in support of its allegations, Korea relied on documents regarding the transactions at issue and the alleged misrepresentation, as well as a statement from the witness's attorney. (FEP at 10). This evidence is sufficient to support a finding of probable cause. The fact that additional investigation may reveal facts undermining the claim against Han is irrelevant at this stage. As discussed above, this is not the appropriate forum for challenging the credibility of Korea's evidence or offering evidence that contradicts it. *See, e.g., Barapin,* 400 F.3d at 749.

### 3. Fraud Against Kim Hwan-gyun and "Violation of the Act on the Aggravated Punishment, etc., of Specific Economic Crimes"

The Prosecutor's statement explains that the facts underlying this claim were supported by the following documents: "Kim Hwan-gyun's statement, audit report, debt analysis, a copy of investment proposal of bond with warrant, a written decision on bankruptcy, investment proposal, balance certificate, and certifi[ed] copy of register." (FEP at 16).

In arguing that probable cause does not exist as to this claim, Han again offers conflicting evidence. (Supplement at 6). As already

discussed, however, this is not the type of evidence the Court can consider. *See, e.g., Barapin,* 400 F.3d at 749. Accordingly, the Court finds that Korea has satisfied the probable cause requirement as to this claim.

### 4. Occupational Embezzlement of Two Company-Owned Vehicles

According to the Prosecutor's Statement, the facts underlying the claim of embezzlement of the company-owned vehicles are supported by the written statement of bankruptcy trustee Lee Jong-lin and a "Register of Automobile."[9] (FEP at 18). Copies of the automobile registers are included in the extradition papers, along with English translations. (*Id.* at Annex 8).

Han first argues that there is no evidence to support the accusation that Han took the vehicles. (Supplement at 7). He next argues that the register of automobiles showed that when Han left for the United States, Deltacom was still listed as the owner of the two vehicles and that if Han had indeed sold the vehicles, title on the register would have been changed. (Supplement at 7-8, Exhibit J).

The United States argues that a Korean judge found probable cause to issue an arrest on this claim under Korean law and that therefore this Court should not revisit that determination. (Second Reply at 22). However, in making a probable cause determination, this Court's "review of the proffered evidence 'cannot be a mere ratification of the bare conclusions of others.'" *United States v. Nolan,* 651 F.Supp.2d 784, 810 (N.D. Ill. 2009) (quoting *In re Extradition of Ribaudo,* 2004 WL 213021,

_____

[9] The Prosecutor's statement also mentions that the facts were supported by the "statement of accuser Cho Han-jeong's attorney." (FEP at 18). However, it appears that this is a translation error. The FEP later clarify that Cho Han-jeong is an employee of Lee Jong-lin and that Cho Han-jeong was making a statement as a proxy for Lee Jong-lin. (FEP at 35).

1  *5 (S.D.N.Y. Feb. 3, 2004)) (conclusory statements by Costa Rican
2  authorities did not support probable cause). Rather, this Court must
3  conduct an "independent review" of the evidence to determine whether
4  probable cause exists. *In the Matter of Extradition of Lehming*, 951
5  F.Supp. 505, 514 (D. Del. 1996); *In the Matter of Extradition of*
6  *Platko*, 213 F.Supp.2d 1229, 1239-40 (S.D. Cal. 2002).

7      In order "[t]o support a finding of probable cause[,]":
8      an affidavit must contain factual support for the affiant's
9      conclusions and either an assertion that the affiant speaks
10      from personal knowledge or a statement of the sources for the
11      affiant's belief and the circumstances from which the affiant
12      concluded that the sources were reliable and credible.
13  *In re Sauvage*, 819 F.Supp. 896, 902-03 (S.D. Cal. 1993). Having
14  undertaken such a review as to this claim, the Court agrees with Han's
15  argument that Korea has not produced sufficient evidence to support a
16  finding of probable cause.

17      The crux of Korea's argument is that because the company vehicles
18  disappeared sometime in the months prior to Han's flight to the United
19  States, Han must have sold them and kept the proceeds. (FEP at 18-19).
20  In support of its contention, Korea relies on the statement of
21  bankruptcy trustee Lee Jong-lin. However, Lee Jong-lin was appointed
22  trustee on July 9, 2001, after the time period during which the
23  vehicles disappeared. (*Id*.). There is no evidence suggesting that Lee
24  Jong-lin had any actual knowledge about what happened to the vehicles,
25  other than the fact that they were missing at the time he was
26  appointed. Korea also relies on the automobile registers. However,
27  these registers document only the fact that Deltacom, with Han as its
28  representative, owned the cars. (FEP at Annex 8). While circumstantial

evidence may be enough to support a probable cause determination, the circumstances offered here are simply insufficient to do so. There is no evidence that Han was directly involved in the disappearance of the vehicles, as nothing suggests that Han had possession of them at the start of the relevant time period, was the only one with access to them, or had ever even used the vehicles himself. Nor is there any evidence that the vehicles were actually sold, as opposed to stolen or otherwise disposed of.

Accordingly, this Court finds that Korea has not met its burden of producing sufficient evidence to provide reasonable grounds to believe that Han committed the crime alleged.

**G.   Statute of Limitations**

Finally, Han asserts that article 6 of the Treaty bars his extradition as to all offenses. (Opposition at 10). Article 6 provides, that:

> Extradition may be denied under this Treaty when the prosecution or the execution of punishment of the offense for which extradition is requested would have been barred because of the statute of limitations of the Requested State had the same offense been committed in the Requested State. The period during which a person for whom extradition is sought fled from justice does not count towards the running of the statute of limitations. Acts or circumstances which would suspend the expiration of the statute of limitations of either State shall be given effect in the Requested State, and in this regard the Requesting State shall provide a written statement of the relevant provisions of its statute of limitations, which shall be conclusive.

1  (FEP at 20).

2       The statute of limitations for the first offense, occupational
3  embezzlement, is seven years in Korea. (FEP at 39). The limitations
4  period for its United States analog, grand theft by embezzlement, is
5  four years. Cal. Penal Code § 801.5. The second offense, fraud, has a
6  limitations period of five years in Korea, (FEP at 39), while its
7  United States analog, bank fraud, is 10 years. 18 U.S.C. § 3293. The
8  third offense, fraud and violation of the Act on the Aggravated
9  Punishment, etc., of Specific Economic Crimes, has a limitations period
10 of five years. (FEP at 39). The limitations period for its United
11 States counterpart, wire fraud, is also five years. 18 U.S.C. § 3282.[10]
12 Absent tolling, the limitations period would have expired for at least
13 the first and third offences under both Korean and U.S. law by the time
14 the extradition process began.

15 **1. Korea's Initiation of Criminal Proceedings**

16      The United States argues that tolling is appropriate because Korea
17 issued an arrest warrant for Han for the first offense and placed him
18 on a wanted list for all of the offenses well within the limitations
19 period.[11] (Second Reply at 6). According to the United States, the
20 statute of limitations stops running when the requesting state first
21 files an arrest order, warrant, or other similar process against the

22 _____

23      [10] Because the Court has not certified the fourth offense for
   extradition based on a lack of probable cause, it will not address
24 whether extradition was sought within the limitations period for this
   offense.

25      [11] For the first offense, which allegedly occurred in late 2000,
26 an arrest warrant was issued on May 18, 2001 and Han was placed on the
   wanted list on June 8, 2001. (FEP at 7). For the second offense, which
27 allegedly occurred in September of 2000, Han was placed on the wanted
   list on July 26, 2001. (Id. at 10). For the third offence, which
28 allegedly took place during late 1999 and 2000, Han was placed on the
   wanted list on October 10, 2001. (Id. at 17).

1  person, and Korea's actions in issuing the warrant and putting Han on
2  the wanted lists satisfy this requirement. (Second Reply at 4). Han
3  argues that under Korean law, the statute of limitations is tolled only
4  when a suspect is indicted. (Supplement at 2).

5       The United States is correct that an indictment is not the only
6  procedure that will stop the tolling of the limitations period for
7  purposes of extradition. The Ninth Circuit confronted this issue in
8  *Sainez v. Venables,* 588 F.3d 713 (9th Cir. 2009), and explained:

9            Crotte's argument that the Mexican arrest warrant did not
10       toll the statute of limitations because it is in no way
11       analogous to a United States indictment lacks merit. We do not
12       reach this conclusion by attempting to analogize a Mexican
13       arrest warrant to an American indictment. Rather, we reach
14       this conclusion by adhering to our established approach of
15       giving credence to foreign proceedings. Indeed, we have
16       declined to rule on the procedural requirements of foreign law
17       out of respect for other nations' sovereignty "and because we
18       recognize the chance of erroneous interpretation is much
19       greater when we try to construe the law of a country whose
20       legal system is not based on common law principles." *Emami v.*
21       *United States Dist. Court,* 834 F.2d 1444, 1449 (9th Cir. 1987)
22       (citation omitted). *See also Theron v. United States Marshal,*
23       832 F.2d 492, 496, 499-500 (9th Cir.1987), *abrogated on other*
24       *grounds by United States v. Wells,* 519 U.S. 482, 117 S.Ct.
25       921, 137 L.Ed.2d 107 (1997) ("[I]t would be inappropriate to
26       engage in such an inquiry into the formal procedure a country
27       uses in instituting prosecution.") (citation omitted).
28  (Id. at 717).

1       As noted above, Korea's procedures for charging a suspect differ
2   from procedures in the United States. The Prosecutor's Statement
3   explains that "Under the law of the Republic of Korea, when a suspect
4   who committed a crime of felony like Han Gang-choon, a prosecutor does
5   not indict the case and strives to secure the custody of the suspect,
6   by requesting for issuance of an arrest warrant or putting the suspect
7   on the wanted list." (FEP at 40). Applying the Ninth Circuit's
8   reasoning in *Sainez*, the Court finds that Korea's actions in issuing
9   a warrant for Han (for the first offence) and placing him on the wanted
10  list (for all three offenses) were sufficient to start tolling the
11  limitations period for each of the offenses. Han's contention that the
12  statute of limitations is tolled only when a suspect is indicted is not
13  supported anywhere in the FEP or otherwise.

14      **2. Han's Flight to the United States**

15      In its formal papers, Korea explains that under Korean law, the
16  limitations period is suspended during the period for which a suspect
17  stays abroad for the purposes of escaping criminal punishment, and
18  therefore, the limitations period was suspended on May 23, 2001, when
19  Han left Korea. (FEP at 39-40). United States law would similarly stop
20  the clock for any person found "fleeing from justice." § 18 U.S.C.
21  3290. In order to toll the limitations period for this reason, the
22  government must prove by a preponderance of the evidence that Han (1)
23  intended to avoid arrest or prosecution and (2) committed a volitional
24  act of concealment. *Man-Seok Choe v. Torres,* 525 F.3d 733, 741 (9th
25  Cir. 2008) (quotations omitted); *see also Quinn,* 783 F.2d at 817.

26      Han essentially argues that because the government has not shown
27  that Han knew he committed a crime, it cannot demonstrate that he had
28  the requisite intent to avoid arrest or prosecution. (Supplement at 2-

25

4). Han also argues that he was unaware of any charges until his arrest in the United states in 2011. (Opposition at 10). Though a warrant and summons had been issued with respect to the first offence on May 18, 2001, prior to Han's departure from Korea, Han argued at the December 6, 2011 hearing that there was no proof that he actually received the summons.

Han's arguments are not persuasive. As intent can rarely be proven by direct evidence, it usually must be inferred from circumstantial evidence. *See United States v. Santos,* 527 F.3d 1003, 1009 (9th Cir. 2008) ("The government is not required to produce direct evidence of the defendant's intent; rather, it may provide circumstantial evidence from which the district court can draw reasonable inferences."). Here, there is significant evidence to support the conclusion that Han knew prior to leaving Korea that he was going to be prosecuted for the first offence of embezzling Roh Du-yeol's telephones. Sometime during the months prior to his flight, he was questioned by police regarding the incident, alerting him that there was an ongoing investigation, even if he had not yet been charged. (FEP at 6-7). On May 18, 2011, an arrest warrant and summons for Han was issued. (*Id.* at 7). Han left the country on May 23, 2011, merely five days later. The timing of his departure in and of itself supports a strong inference that Han intended to flee. Moreover, even if Han's contention that he never received the summons is to be believed, the fact remains that Han knew about the ongoing investigation and yet did nothing to confirm that it had been completed or that his participation was no longer needed prior to fleeing. The fact that Han's family moved to the United States shortly after his departure and that Han has not since returned to Korea further support an inference of Han's intent to flee.

The evidence also supports the inference that Han intended to flee from prosecution for the other two offences as well. First, it appears that investigations began into both offences within weeks after Han's departure. (FEP at 9-14, 15-17). Second, investigations had already begun a short time prior to Han's departure with respect to both the first offence and for three other offences, for which extradition is sought by Korea, but not the United States. (*Id.* at 7, 13, 19). These offenses all appear to be part of a pattern of fraudulent conduct engaged in by Han as the CEO Deltacom in the year prior to his flight. The fact that multiple investigations began just prior to Han's flight provides a strong inference that Han was on notice that all of his conduct as CEO of Deltacom was under scrutiny, and that he decided to flee to avoid any criminal liability that would come of it. Moreover, as discussed above, the fact that he brought his family to the U.S. and never returned to Korea further supports this inference.

Accordingly, the Court finds that Korea has met its burden of showing that Han, more likely than not, left Korea in order to avoid prosecution and that therefore his flight tolled the statute of limitations as to the relevant offences.[12]

## III. Findings, Conclusions And Certification

For the reasons discussed above, the Court grants Korea's request for Han's extradition and makes the following findings and conclusions in support of this Memorandum and Order:

---

[12] Han submits that his decision to leave Korea was based on the violence and threats directed at him and his family by Roh Du-yeol. (Opposition at 2-6). While these facts may have provided Han with an additional reason to leave Korea, this does not change the Court's conclusion that Korea has presented sufficient evidence to support a finding that Han fled Korea with the intent to avoid prosecution.

1.   This Court has jurisdiction over the proceedings;

2.   This Court has jurisdiction over Gang-choon Han;

3.   There is a valid extradition treaty between the United States and the Republic of Korea in full force and effect;

4.   The Korean offenses of Occupational Embezzlement and Fraud are extraditable offenses consisting of conduct considered to be criminal in both the United States and the Republic of Korea, and which are punishable by deprivation of liberty for a period of more than one year;

5.   There is probable cause to believe that Han committed the crimes of Occupational Embezzlement and Fraud;

6.   There are no applicable treaty provisions which bar extradition; and

7.   The Republic of Korea's formal papers and documents in support of its request for Han's extradition are and have been presented in accordance with the laws of the United States of America and the Treaty, and have been translated and authenticated in the manner required by the Treaty.

The Court hereby certifies the above findings and conclusions, and the transcripts of the extradition hearing held in this case, to the Secretary of State, pursuant to 18 U.S.C. § 3184.

Dated: January 6, 2012

Marc L. Goldman
United States Magistrate Judge

28